**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ENTERPRISE MANAGEMENT LIMITED, INC., and
DR. MARY LIPPITT

    Plaintiffs,                                      CASE NO.
vs.                                                    JURY TRIAL DEMANDED

MAYO CLINIC and
MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH

    Defendant.
_____/

**COMPLAINT**

Plaintiffs, Enterprise Management Limited, Inc. and Dr. Mary Lippitt sues Defendants Mayo Clinic and Mayo Foundation for Medical Education and Research and states as follows:

**PARTIES**

1.    Plaintiff Enterprise Management Limited, Inc. ("EML"), is incorporated in the state of Florida and has a principal place of business at 4531 Roanoak Way, Palm Harbor, FL, 34685.

2.    Plaintiff Dr. Mary Lippitt ("Dr. Lippitt", collectively with EML "Plaintiffs"), is an individual residing at 4531 Roanoak Way, Palm Harbor, FL, 34685. She is the President of Plaintiff EML, and a shareholder in EML as well.

3. Defendant Mayo Clinic ("Mayo Clinic") is incorporated in the state of Minnesota and, on information and belief, is headquartered at 200 First Street SW, Rochester, MN 55905.

4. Defendant Mayo Foundation for Medical Education and Research ("Mayo Foundation", collectively with Mayo Clinic "Defendants") is incorporated in the state of Minnesota and, on information and belief, is headquartered at 200 First Street SW, Rochester, MN 55905.

5. On information and belief, Defendants conduct business in this District at Mayo Clinic's Jacksonville campus (formerly St. Luke's Hospital) located at 4500 San Pablo Road, Jacksonville, FL 32224.

## JURISDICTION AND VENUE

6. This is a civil action for copyright infringement arising under Sections 32 and 43(a) of the Copyright Act, 17 U.S.C. § 501, et seq. and deceptive and unfair trade practices arising under Fla. Stat. §§ 501.20 l-213 (FDUTPA.)

7. This Court has jurisdiction pursuant to 17 U.S.C. § 501, et. seq. and 28 U.S.C. §§ 1331 and 1338(a)1, and supplemental jurisdiction as stated in 28 U.S.C. §1367, and/or upon principles of pendent and ancillary jurisdiction.

8. Venue properly lies within this Judicial District under 28 U.S.C. § 1400(a) because Mayo Clinic is a resident of this District and under 28 U.S.C. § 1391(b) a substantial part of the events or omissions giving rise to the claim occurred in the District, and the property that is the subject of this action is situated in this District.

# INTRODUCTION

## EML's Business

9. EML is a consulting organization headquartered in this District that helps organizations develop strategies to capture the benefits of new opportunities, enhance engagement, ensure execution, and evaluate systems for maximum return.

10. Among other things, EML facilitates large scale change efforts, introducing new technology, gaining support for new initiatives, improving cross-functional collaboration, boosting innovation, or enabling new leaders to quickly build their team.

## Dr. Lippitt's Copyrighted Works

11. Since at least as early as 1986, Dr. Lippitt has been developing and refining a system for managing complex organizational change.

12. Between 1987 and 2003, Dr. Lippitt developed a set of creative graphic and literary works ("Dr. Lippitt's Works" or "Works") that present her system for managing complex organizational change. The Works are currently exclusively licensed to EML for use by EML in its various consulting and educational engagements.

13. At the heart of each of Dr. Lippitt's Works is a single page graphic variously entitled "Managing Complex" and "Aligning for Success".

14.  A version of a chart from 1987 entitled "Managing Complex Change"("MCC Chart") is as follows.



15.  A version of a chart from 2000 and 2003 entitled "Aligning for Success" ("AFS Chart")is as follows.



16.     Dr Lippitt registered copyrights on three of the Works in 1987, 2000, and 2003: TX 2-124-202 (the "1987 Copyright", reflecting the MCC Chart); TXu 956-226 (the "2000 Copyright", reflecting the AFS Chart); and TX 5-827-350 (the "2003 Copyright", also reflecting the AFS Chart) collectively the "Lippitt Copyrights."

17.     The Lippitt Copyrights are exclusively licensed to EML for use in EML's consulting business.

18.     The MCC Chart was used by Dr. Lippitt and EML in numerous presentations, training sessions and consulting engagements between 1987 and 1999 to a wide variety of organizations, including organizations in the health care industry.

19.     The AFS Chart was used by Dr. Lippitt and EML in numerous presentations, training sessions and consulting engagements between 1999 to 2017 to a wide variety of organizations, including organizations in the health care industry.

20.     EML has sold various publications including the Works to those who wish to purchase such publications for distribution in training programs. The Works have never been published to the general public. EML also licenses the Works to organizations who wish to use the Works to develop their workforce.

### The Defendants' Apparent Interest In Dr. Lippitt's Works

21.     On or before November 6, 2012 A.J. Dunn ("Dunn"), then a hospital administrator at Defendants' Jacksonville campus, contacted Dr. Lippitt and asked her to speak at the Jacksonville Chapter of the American College of Healthcare Executives ("ACHE").

22. On or about November 6, 2012 Dr. Lippitt spoke to the ACHE at the Epping Forest Yatch Club in Jacksonville. During her presentation, Dr. Lippitt used the AFS Chart. The AFS chart was a point of discussion with the attendees and Dunn. Dr. Lippitt mentioned and showed Dunn an article that included the AFS Chart that could be purchased from EML for personal use or in training classes.

23. Dunn invited Dr. Lippitt to tour Defendants' Jacksonville campus. Dr. Lippitt accepted and she toured the campus including Defendants' newly built experiential training operating suite.

24. Since the tour in 2012, Dr. Lippitt did not hear from anyone at Mayo until August 2016.

### The Defendants' Infringement of the Lippitt Copyrights

25. On or about August 18, 2016 Dr. Lippitt received an email from an employee of the Defendants, Barbara Terrill ("Terrill"), indicating, stating in relevant part the following:

> The Mayo Clinic Quality Academy is seeking permission to use a chart copyrighted by Dr. Lippitt called, "Managing Complex Change" (1987) in our Silver/Applied Quality Essentials program materials. The chart would be contained in presentation materials (PowerPoint and workbook) for Mayo Clinic learners. (…) Please advise on your permission process. Thank you. We look forward to hearing from you.

26. After an exchange of several phone calls and emails, Dr. Lippitt was informed that the Defendants' had been using a chart nearly identical to the MCC Chart and now wanted to make sure they had permission to continue to use the material for training approximately 1,400 people per year.

6

27.     Dr. Lippitt requested copies of the work that had been used. Terill emailed Dr. Lippitt a screen shot of a chart used in a a training course developed by the Defendants. The chart, entitled "Quality Improvement Change Components", bearing an acknowledgement of Dr. Lippitt's 1987 copyright (hereinafter the "2016 Mayo Chart"), is as follows:



28.     Dr. Lippitt in a subsequent phone conversation with Terrill asked to see how the work had been described or explained.  On August 30, 2016, in an email from Terrell to Dr. Lippitt, Terrell  provided a chart from an unknown source that Terrell stated the 2016 Mayo Chart was based on (hereinafter the "Unknown Source Chart."). The Unknown Source Chart is as follows:



29.     The chart clearly attributes the source of the chart to Dr. Lippitt's 1987 copyrighted chart. At the bottom the chart it states, in relevant part,

*copyrighted by Dr. Mary Lippitt, founder and president of Enterprise Management, Ltd., is 1987.*

30.     Defendants asked Dr. Lippitt the cost of licensing future use of the MCC Chart.  Dr. Lippitt offered licensing terms to Defendants, but received no response. On September 23, 2016, Dr. Lippitt emailed Terrell, withdrawing her offer of licensing terms and asking for contact information for Defendants' counsel, stating in relevant part:

8

> I have concluded since I have not heard back from you that the group that was interested in using the Managing Complex Change chart has decided against the opportunity. Therefore, I consider our discussions on future use terminated. I officially withdraw my offers,
>
> I request your further assistance. Please provide the name and contact information for your legal counsel in the next three business days.

31.  A few weeks after several communications between Dr. Lippitt and the Defendants' Legal Assistance department in which Dr. Lippitt suggested Defendants wereinfringing one or more of her copyrights, Dr. Lippitt was contacted by John Pickerill, Esq ("Pickerill"), outside counsel for Defendant, on November 7, 2016.

32.  Dr. Lippitt engaged counsel for herself and EML, Kirstin M. Jahn, Esq. ("Jahn".) Jahn and Pickerill then exchanged several communications in which Pickerill stated that Defendants used a chart from 2011-2015 that was nearly identical to the MCC Chart, but did not include an attribution to Dr. Lippitt (hereinafter the "2011-2015 Mayo Chart.")

33.  Pickerill further indicated Defendants used chart in 2015 that was also nearly identical to the MCC Chart, but additionally included an attribution to Dr. Lippitt (hereinafter the "2015 Mayo Chart.")

34. Pickerill provided a copy of 2011-2015 Mayo Chart, which is as follows:



35. Pickerill provided a copy of 2015 Mayo Chart, which includes clear attribution to Dr. Lippitt, which is as follows:



10

36. Defendants 2011-2015, and 2015 Charts shown above are either identical or derivative of Dr. Lippitt's work.

37. Clearly, Defendants literally copied the MCC Chart without authorization, or created an unauthorized, clearly derivative work based on the MCC and/or the AFS Chart in the 2011-2015 Mayo Chart, the 2015 Mayo Chart, and the 2016 Mayo Chart.

38. Thus, Defendants infringed one or more of the 1987 Copyright, the 1990 Copyright, and the 1993 Copyright in every use it made of the 2011-2015 Mayo Chart, the 2015 Mayo Chart, and the 2016 Mayo Chart.

39. On information and belief, the Defendants used the 2011-2015 Mayo Chart, the 2015 Mayo Chart, and the 2016 Mayo Chart in training courses developed by Defendants' Quality Academy. Based on Defendants' estimate of 1,400 uses per year for the Proposed Mayo Chart, the Defendants may have committed approximately 7,000 acts of copyright infringement, not counting likely infringing acts in 2016 and possibly 2017.

40. Due to the fact that Defendants invited Dr. Lippitt to speak about her work in managing complex change at an association conference in 2012, Defendants were aware of the fact that Dr. Lippitt had developed models for managing complex change at that time and, on information and belief, had viewed or obtained copies of one or more of Dr. Lippitt's Works at least as early as 2011.

41. On information and belief, the Defendants were aware that the 2011-2015 Mayo Chart, the 2015 Mayo Chart, and the 2016 Mayo Chart infringed one or more of Dr. Lippitt's Copyrights at least as early as 2011, and therefore Defendants willfully in-

fringed one or more of the Lippitt Copyrights for each use of the 2011-2015 Mayo Chart, the 2015 Mayo Chart, and the 2016 Mayo Chart.

## COUNT I – COPYRIGHT INFRINGEMENT

42. Plaintiffs restate the allegations set forth in paragraphs 1-44 and incorporates them herein by reference.

43. Defendants has infringed one or more of the Lippitt Copyrights under 17 U.S.C. §§ 501, et seq. in reproducing, publishing, and/or preparing derivative works based on, and/or displaying the heart of one or more of Dr. Lippitt's Works without authorization from Dr. Lippitt or EML.

44. As a result of Defendants' infringing acts, Plaintiffs have suffered, and continue to suffer, irreparable damage.

45. Defendants is liable to Plaintiffs under 17 U.S.C. § 504 for either the copyright owner's actual damages and any additional profits of the infringer or statutory damages.

46. Furthermore, since Defendants willfully and flagrantly infringed one or more of the Lippitt Copyrights on multiple occasions, Defendants are liable to Plaintiffs for maximum statutory damages under 17 U.S.C. § 504(c)(2).

47. Furthermore, the Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 and to an order impounding all infringing materials under 17 U.S.C. § 503.

48. Lastly, particularly in light of the Defendants' willful and flagrant violations 17 U.S.C. § 505, Plaintiffs should be awarded the recovery of full costs reasonable attorney's fees under 17 U.S.C. § 505.

## COUNT II – UNFAIR COMPETITION UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

49.     Plaintiffs restate the allegations set forth in paragraphs 1-44 and incorporates them herein by reference.

50.     Defendants is using charts that are identical to, or derivative from, charts in one or more of Dr. Lippitt's Works in connection with goods and services to the same purchasers and class of purchasers without consent from either of the Plaintiffs.

51.     Plaintiff's actions as stated above constitute a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat.§§501.201 et seq.

52.     Due to Defendants' violation of this Act, Plaintiff is entitled to recover Plaintiff's profits, the costs of this action, including reasonable attorneys' fees, and a permanent injunction, enjoining Defendants from using Dr. Lippitt's Works.

## REQUESTED RELIEF

WHEREFORE, EML and Dr. Littpitt pray for relief as follows:

A. A permanent injunction enjoining Defendants from reproducing, preparing derivative works based on, and/or displaying Dr. Lippitt's Works without authorization from Dr. Lippitt or EML;

B. An award of Plaintiffs, special, actual, and statutory damages as follows:

   a.     Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. §504(b) or, alternatively, enhanced statutory damages pursuant to 17 U.S.C. §

      504(c) and 17 U.S.C. § 504(c)(2), for Defendant' willful infringement of the Lippitt Copyrights;

  b.  Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. §1203(c)(2) or, alternatively, statutory damages pursuant to 17 U.S.C. § 1203(c)(3);

  c.  Plaintiff's damages and Defendant' profits as allowed by state law under Fla. Stat. § 495.141 (1);

  d.  An award of treble damages under Fla. Stat. § 495.141 (1), the amount to be determined at trial;

C.  An award of costs and attorneys' fees to Plaintiffs under 17 U.S.C. § 505 and Fla. Stat. § 495.141 (1) or any other applicable statutory provision; and

D.  Such other and further relief as the Court deems just and proper.

**Dated: April 20, 2017.**

Respectfully submitted,

**HARPER IP LAW, P.A.**

**/s/Wayne Vincent Harper**
Wayne V. Harper
Florida Bar No. 763,101
711 S. Howard Ave.
Tampa, FL 33606
Telephone: (813) 892-7839
wayne@harperiplaw.com

Attorney for the Plaintiffs